

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00004-CR
_____

JAMMIE LEON HINES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th Judicial District Court
Smith County, Texas
Trial Court No. 114-1655-07

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Jammie Leon Hines, convicted by a Smith County jury of indecency with a child (TEX. PENAL CODE ANN. § 21.11(a), (c) (Vernon 2003)), and sentenced by that jury to life imprisonment, perfected his appeal to the Twelfth Court of Appeals; the Texas Supreme Court transferred his appeal to this Court pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). Hines urges five issues on appeal:

(1)     The alleged erroneous refusal of the trial court to declare a mistrial after the State improperly introduced evidence that Hines had been previously sent to prison.

(2)     The alleged error committed by the trial court in allowing the introduction of evidence of an extraneous offense committed by Hines.

(3)     That the State was allowed to enhance the punishment range in violation of due process of law.

(4)     That the trial court erred in allowing the State to comment during voir dire on Hines's Fifth Amendment right to not testify in his defense.

(5)     That the jury charge was erroneous because it permitted a finding of guilt on less than a unanimous verdict by the jurors.

2

## FACTS OF THE CASE

The story as related by the witnesses for the State was clear. At the time of the incident giving rise to the charges, the victim, Julia,[1] was the thirteen-year-old friend and schoolmate of Hines's fourteen-year-old stepdaughter, Annie. Julia had stayed a number of times in the home of Hines and his wife, Judy Hines, even for extended periods of two to three weeks. During these periods of time, Julia was treated like a member of the Hines family.

On the afternoon in question, Julia had asked her mother to drop her off at the Hines residence. Upon her arrival, she discovered that Hines and his son, William, were the only occupants of the house; although Annie was not then home, she was expected to return shortly. Hines was dressed only in his boxer shorts and was ironing his pants. Shortly after Julia arrived, William announced that he was going to take a shower. That left Julia and Hines as the sole occupants of the living room. Julia, while sitting on the couch, placed a telephone call to a young male friend, Trent; just as this call was being answered, Hines came over to her and began to touch her. Hines began to rub her genitals and grab her breasts while pulling her toward him. Julia instructed him to stop, pushed his hands away, and stood, at which point Hines ceased what he was doing and instructed her to tell no one what he had done. Trent related that upon answering the telephone call, he heard Julia saying, "Stop, don't touch me," immediately before the connection was terminated.

---

[1]Pseudonyms are used in the identification of each of the minors involved, including those who are witnesses.

Hines then dressed and left the house with William, who had returned to the room after taking his shower. Julia waited for Annie to arrive home and then related the occurrences to her, at which point Annie tearfully confessed that Hines had "did [sic] it to her" as well. The two girls then contacted Annie's aunt, Jessica Richardson, who lived nearby, who drove them to the place of employment of Cora, Julia's mother, to whom Julia related the story of what had happened. Cora then contacted the Troup, Texas, Police Department and took Julia to the police station.

Annie testified about the apparent emotional upset which Julia demonstrated when Annie and Richardson arrived at the Hines house. She also related incidences of Hines having touched her on her "private parts" and having penetrated her vagina with his penis. However, she said that her mother prevailed on her to maintain silence about this conduct because if law enforcement officials were told of it, the consequences to Annie's half brother, William (Hines's son), would be very adverse. Although Annie had told a teacher of the problems she was having with Hines's advances, she recanted the story entirely in order to protect her younger half brother from the consequences of Hines going to prison.

Hines called Richardson (the aunt of Annie, and Hines's sister-in-law), who testified that she arrived at the Hines house with Annie shortly after the incident and that Julia did not seem particularly upset or crying until some time later, when she related the story to her mother. That night, Julia insisted upon attending a party with other teens and appeared to have a care-free time there, remaining at the party until 2:30 to 3:00 in the morning. From this conduct, Richardson

4

opined that she did not believe that Hines had committed the acts Julia had charged that he had done; however, Richardson also testified to believing that Hines had raped Annie, basing her reasoning upon a rationale somewhat akin to blood being thicker than water. Hines's wife and son both maintained that Hines always wore layers of clothes while in his house, both winter and summer, and did not go around the house bare-chested and in boxer shorts as Julia had testified he was dressed when the incident occurred. Hines's son specifically testified that on the afternoon in question, Hines was dressed in warmups and a shirt and that when he (the son) had emerged from the shower after the alleged incident, Julia did not evidence an upset demeanor. Judy also denied that Hines had raped Annie.

**REFUSAL TO GRANT MISTRIAL**

During the State's cross-examination of Richardson during the guilt/innocence phase of the trial, she was asked if she was aware that Hines had once been convicted of assaulting his wife, Richardson's sister; Richardson replied affirmatively. At that point, the following exchange occurred:

Q  [BY THE STATE]:  And that your brother-in-law --

THE COURT:  Excuse me. Counsel, approach the bench for a minute, please.

[HINES'S ATTORNEY]:  I have to object. I have no problem with the assault. It's going to come out when the wife gets on the stand anyway, but I'm going to object to where he's getting ready to go right now.

5

THE COURT: He hasn't taken the stand yet. And so you have to be very limited on what you bring in front of this jury.

[STATE]: Okay. I --

THE COURT: You cannot just blatantly -- because he hasn't testified yet.

[STATE]: I'll leave it at that.

THE COURT: Okay.

Hines had been previously sent to prison[2] and had been released on parole; Hines, anticipating the next question, objected before the State could mention it. The witness who testified after Richardson was Judy, Hines's wife. The State commenced its cross-examination of this witness with the following:

Q [STATE]: You've been married to Mr. Hines for 14 years; is that correct?

A [JUDY]: Correct.

Q [STATE]: Now, were you married to him after he got out of prison?

A [JUDY]: I was married to him before he went to prison, yes sir.

The immediate objection by Hines was sustained by the court, who then requested that the jury be admonished to disregard. Hines then asked that the court grant a mistrial on the basis that the revelation of the prior conviction and prison term so tainted the trial that an instruction to

_____

[2]The enhancement used by the State showed that Hines had been previously convicted of burglary.

6

disregard would be fruitless. The jury was recessed and a rather lengthy exchange occurred outside its presence.

During that exchange, the State maintained that the question was proper under the theory that since Hines was on parole and a conviction would virtually assure that his parole would be revoked, this fact would likely cause Judy to fabricate her testimony, casting doubt on her veracity and on the ability of Hines to manipulate her, causing her to lie. The State further maintained that, "[W]hen you have someone who is married to someone who has been to prison and is on parole, well, then her character can be attacked when she renders an opinion against another individual."

The court responded, "This is so incredibly prejudicial for the State to throw that out in front of this jury in an effort to, quote, attack her credibility. . . . It is absolutely objectionable. It is highly prejudicial. It is completely -- the State has not proffered to the Court a lawful basis for its admissability [sic] before the jury." The court then announced that it would withhold a ruling on Hines's motion for mistrial until later and entered an order in limine to restrict further mention of the matter of Hines's extraneous offense; when the jury returned, the court admonished it in the following fashion:

> When we recessed, the Court had sustained the defense's objection to the improper question asked by the State of Texas. The Court instructs you that you are not to consider that question. You are not to use it as any evidence in this case or circumstance against the defendant in any way.
>
> We have some very strict rules of evidence that apply in court so that a defendant receives a fair trial, so that a defendant is tried on the accusations in the indictment in this case, so that a jury is focused on what evidence, if any, they hear

7

and what, if any, they give to that testimony as to whether or not a defendant is guilty as charged in this indictment and whether or not these allegations have been proved beyond a reasonable doubt.

Now, when something inadmissible is thrown out there, I can sustain an objection, and I can tell you from now till [sic] the earth ends and spins off into the universe that you are not to consider that evidence.

And you and I both know it's like a skunk crawling into that jury box and me reaching in and yanking that skunk out and telling you you can't smell what you think you're smelling, okay?

Same thing telling you to disregard something that you've heard. You've heard it. There are no magic words that I'm going to speak that's going to take it out of your brain.

I am instructing you that when you go back to the jury room, that you are not to consider that evidence in any way, not to weigh it in in [sic] your decision-making, not to utilize that inadmissible, that improper question in any way in your decision-making.

At the close of his case, Hines again urged the court to grant a mistrial. The court, while observing that, "[T]he fact that someone has been to prison is about as prejudicial as you can get in a case," determined that the admonition which had been given was sufficient to protect Hines's rights and denied the motion for a mistrial.

The State still maintains in its brief that the question and response were proper and admissible. In support of this proposition, the State first mentions Rule 611(b) of the Texas Rules of Evidence: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." TEX. R. EVID. 611(b). In its brief, the State further relies on *Jackson v. State*, 482 S.W.2d 864, 867–68 (Tex. Crim. App. 1972), and the statement in it that "the adverse party has

8

the right to prove any motive or declaration of a witness which will tend to show his bias, interest or prejudice, or any other mental condition of the witness which in any manner tends to affect his credibility." It goes further to aver that "[t]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination," citing *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974), as its authority. The State then discusses cases in which the criminal record of a witness can be used to impeach the witness or to show bias or prejudice: *Maxwell v. State*, 48 S.W.3d 196, 199 (Tex. Crim. App. 2001); *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). However, the cited cases and the *Davis* case which the State's brief quotes involve the question of introduction of evidence of the criminal convictions of witnesses, not convictions of the defendant on trial. Accordingly, they are not on point. The State attempts to justify the introduction of Hines's prior penitentiary stay by relying on the statement in *Moreno v. State*, 22 S.W.3d 482, 485–86 (Tex. Crim. App. 1999), that even "unadjudicated crimes could be admissible to show a witness's bias or interest in the particular case." However, *Moreno* is easily distinguished because although the witness being impeached was the defendant himself, he had chosen to testify. Here, Hines had not testified and, indeed, never testified in his own behalf during the guilt phase of the trial.

"The general rule in all English speaking jurisdictions is that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions." *Young*

9

*v. State*, 159 Tex. Crim. 164, 261 S.W.2d 836, 837 (1953).  Although Rule 404 of the Texas Rules

of Evidence specifically bars the introduction of evidence of other crimes in an effort to show "the

character of a person in order to show action in conformity therewith," it specifically permits such

evidence under some circumstances for some other purposes, "such as proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  TEX. R. EVID.

404(b).[3]  Even if otherwise admissible, evidence must be tested against the constraints in Rule 403,

constraints which include whether its "probative value is substantially outweighed by the danger of

unfair prejudice."  TEX. R. EVID. 403.

The trial court, an experienced and widely-respected Texas jurist, correctly found this

evidence to have been "incredibly prejudicial" and "absolutely objectionable."

> The proper method of preserving error in the admission of improperly offered
> evidence is for appellant's counsel to:  1) state a timely specific objection, 2) obtain
> a ruling on the objection from the trial court, 3) move for an instruction for the jury
> to disregard, 4) obtain a ruling on the instruction and if sustained, have the jury
> instructed, 5) move for a mistrial, and 6) obtain a ruling on the motion for mistrial.
> These steps must be taken in sequence, and  counsel cannot object and move for an
> instruction and mistrial without obtaining a ruling on the objection.

*Hadden v. State*, 829 S.W.2d 838, 841 (Tex. App.—Corpus Christi 1992, pet. ref'd) (citing *DeRusse*

*v. State*, 579 S.W.2d 224, 236 (Tex. Crim. App. [Panel Op.] 1979)).  Hines followed this procedure

to the letter, properly preserving the error for appeal.  Hines now maintains that the admonition or

---

[3]This list is illustrative, rather than exhaustive, and extraneous-offense evidence may be
admissible when a defendant raises a defensive issue that negates one of the elements of the offense.
*Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005).

instruction to the jury to disregard was insufficient to safeguard his rights, that the jury was hopelessly and irrevocably tainted by the statement, and that the trial court was in error in not having declared a mistrial.

The Texas Court of Criminal Appeals recently observed that "Extraneous-offense evidence is 'inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges not part of the present case against him.'" *Sims v. State*, No. PD-1575-07, 2008 Tex. Crim. App. LEXIS 820 (Tex. Crim. App. July 2, 2008) (quoting *Pollard v. State*, No. 04-06-00844-CR, 2008 Tex. App. LEXIS 609, at *4 (Tex. App.—San Antonio Jan. 30, 2008, pet. granted) (citing *Michelson v. United States*, 335 U.S. 469, 475–76 (1948)). In addition, one notes that (using the trial court's analogy when instructing the jury to disregard) the skunk did not just slink into the jury box; it was intentionally flung there by the State.

Mistrial is the appropriate remedy when the objectionable events "are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004). Conversely, a mistrial is not required where prejudice is curable by an instruction to the jury to disregard. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).

An appellate court reviewing a trial court's ruling on a motion for mistrial must utilize an abuse of discretion standard of review, *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), and must uphold the trial court's ruling if that ruling was within the zone of reasonable disagreement,

11

*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Wead v. State*, 129 S.W.3d 126, 128 (Tex. Crim. App. 2004).

Although it appears from the circumstances that the State (having been previously instructed to refrain from the same inquiry which it ultimately pursued) fully intended the release of the skunk in the jury box to which the trial court made reference, and although the interjection of the fact that Hines had previously been to prison was "incredibly prejudicial" to him, the trial court determined that its rather lengthy and specific instruction in plain and unvarnished language to the jury to disregard the statement which it had heard was sufficient to cure the prejudice caused by the statement. Noting that the statement concerning Hines's term in prison was very short and was not thereafter mentioned by anyone in the presence of the jury, the decision by the trial court as to whether to declare a mistrial lay within the zone of reasonable disagreement and the decision not to do so was not error.

Accordingly, this point of error is overruled.

**EVIDENCE OF EXTRANEOUS OFFENSE**

Hines also complains that the trial court erred in allowing the introduction of evidence of an extraneous offense committed by Hines.

This complaint arises from substantial testimony regarding offenses which were alleged to have been committed by Hines against Annie, his stepdaughter.

12

The reason for Julia to have been in Hines's house at the time of the alleged offense was that she was waiting for Annie to return. After the incident, Julia stayed at the Hines house until Annie arrived. When Annie returned, Julia related the incident to her and Annie immediately said that Hines had done the same thing to her and had even raped her. As stated above, there was substantial testimony concerning this previous incident and the fact that Annie had recanted her story after she considered the adverse impact a prison term for Hines would have on her younger half-brother. After Hines called Richardson in his defense, she stated on cross-examination that she believed that Hines had, indeed, placed his hand on Annie's vagina and had placed his penis in her vagina.

It is possible that the extraneous evidence of the assault on Annie was admissible pursuant to Rule 404(b) to show preparation, plan, or absence of mistake or accident. *See* TEX. R. EVID. 404(b). However, the issue of its admissibility was never ruled upon by the trial court because no objection was ever raised to its repeated mention.

The law requires that to properly preserve a complaint, a party must have presented to the trial court a specific objection, request, or motion, or must state the specific grounds for the objection if it is not apparent from the context. TEX. R. APP. P. 33.1(a)(1); TEX. R. EVID. 103(a)(2). To preserve error for appeal, the complaining party must timely present his claim to the trial court with sufficient specificity to make the trial court aware of the complaint. *Saldano v. State*, 232 S.W.3d 77, 88 (Tex. Crim. App. 2007); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

13

No objection having been lodged to the testimony regarding the extraneous offense, any error in having permitted its entry was not preserved. Accordingly, this point of error is overruled.

**ENHANCEMENT OF THE PUNISHMENT RANGE**

The original crime with which Hines was charged is a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(d). Six days before the commencement of trial, the State filed a notice of its intention to enhance to a first-degree felony pursuant to Section 12.42(b) of the Texas Penal Code, this enhancement being based on Hines's prior felony conviction. *See* TEX. PENAL CODE ANN. § 12.42(b) (Vernon Supp. 2008). Although the Texas Court of Criminal Appeals has determined that the "perhaps preferable" route to follow regarding enhancements is to include the attempt to enhance in the indictment, it is permissible to take the course of action followed here. *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997). Hines complains, however, that the trial court erred in not having ruled on the motion to enhance until immediately before the commencement of voir dire, claiming that the delay in ruling on this motion provided Hines with insufficient time to adequately prepare for trial. Hines maintains that the immediacy of the ruling constituted a violation of his right to due process of law.[4]

It is noted that the first procedural matter which the trial court addressed after the announcements of the parties dealt with the motion for enhancement filed by the State. At that time, Hines lodged an objection to this motion, claiming that he had not received reasonable notice prior

---

[4]U.S. CONST. amends. IV, XIV; TEX. CONST. art. I, §§ 11a, 14.

14

to trial of the intention of the State to enhance. In the exchange that followed, the State noted and the trial court suggested that if Hines had objections to the amount of prior notice provided to him, his remedy would be to request a continuance. However, Hines, noting that he may opt to request a continuance at the commencement of the penalty phase, asked for no continuance and none was granted. At the commencement of the penalty phase, Hines did not request a continuance but, rather, announced that he was ready to proceed and entered a "true" plea as to the enhancement allegation.

The Texas Court of Criminal Appeals has noted that "when a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, *notice given at the beginning of the punishment phase* satisfies the federal constitution." *Villescas v. State*, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006) (emphasis added). In *Villescas*, the court of appeals had relied upon the statutory requirement of ten days' notice of the amendment of an indictment or information[5] to reverse because the defendant had received only six days' notice before trial commenced. *Villescas v. State*, No. 08-03-00131-CR, 2005 Tex. App. LEXIS 1118 (Tex. App.—El Paso Feb. 10, 2005), *rev'd*, 189 S.W.3d 290 (Tex. Crim. App. 2006) (not designated for publication). In overruling the El Paso court on this matter, it was determined that "in a review for constitutional error, the statutes are not controlling" and that the six-day notice was sufficient. *Villescas*, 189 S.W.3d at 294.

---

[5]TEX. CODE CRIM. PROC. ANN. art. 28.10 (Vernon 2006).

15

We determine that the trial court did not err in allowing the amendment, although the motion to enhance was filed only six days before trial.

**COMMENT ON RIGHT TO REMAIN SILENT**

During voir dire, the State made the following comment: "They [referring to people on trial in criminal cases] testify all the time. It's clearly not unusual for defendants to testify in a criminal proceeding." Hines maintains that this comment, when coupled with an "inadmissible question during the trial relating to a prior felony conviction" constituted an effective denial of Hines's constitutional right to not testify, citing constitutional and statutory authority for that right.[6]

To commence, the statement in voir dire, standing alone, constitutes no such comment. Even had it been, there was no objection raised to it at trial. Accordingly, if this had been an objectionable comment, the error would not have been preserved for appeal. TEX. R. APP. P. 33.1(a)(1).

As to any additional comment which might have been made at trial which exacerbated the impact of this statement (thus raising it to prohibited standards), Hines's brief does not point out the supposedly-objectionable comment or statement which was made. It is, therefore, not adequately briefed and will not be considered to have aggravated the statement. *See* TEX. R. APP. P. 38.1.

This point of error is overruled.

---

[6]U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2006).

16

**ALLEGED JURY CHARGE ERROR (LESS THAN UNANIMOUS VERDICT)**

The indictment in this matter alleged that Hines did "with the intent to arouse or gratify" his sexual desire, "intentionally or knowingly engage in sexual contact" with Julia by "touching the anus and genitals and breast" of the girl. The jury charge directed the jury to find the defendant guilty if he did "intentionally or knowingly . . . engage in sexual contact with [Julia] by touching the anus *or* genitals *or* breast of" Julia. (Emphasis added.)

Hines correctly points out that Texas requires unanimous verdicts in criminal cases. *See* TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon Supp. 2008), arts. 37.02, 37.03, 45.034–.036 (Vernon 2006); *see also Stuhler v. State*, 218 S.W.3d 706, 716 (Tex. Crim. App. 2007). He then maintains that the charge rendered it possible that the jury could have arrived at a nonunanimous verdict; that is, if some of the jurors had found that the State had proven that Hines had contact with one of the three body parts mentioned, while others found that the requisite burden of proof was shown that Hines had made felonious contact with other prohibited intimate body parts of the child. Hines maintains that if the jury arrived at its verdict in that fashion, then it would have found him guilty of different offenses.

When reviewing a claim that there was error in a jury charge, we employ a two-step process or analysis. We first make a legal inquiry to determine if an error was, indeed, made; if an error was made, we then make the factual determination of whether that error resulted in sufficient harm as to require a reversal. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).

17

The offense with which Hines was charged is indecency with a child (TEX. PENAL CODE ANN. § 21.11). In relevant parts, this proscribes engaging "in sexual contact with the child" or causing "the child to engage in sexual contact." TEX. PENAL CODE ANN. § 21.11(a)(1). The term "sexual contact" is defined as being,

> In this section, "sexual contact" means either or both of the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
>
> (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
>
> (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

TEX. PENAL CODE ANN. § 21.11(c).

One of the authoritative cases involving this question is *Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005). In *Ngo*, the defendant was charged with: (1) stealing a credit card, (2) receiving a stolen credit card, and (3) fraudulently presenting a credit card to pay for goods or services. *Id.* at 741. Those three acts were different acts entirely, each one of which constituted a crime in and of itself. In that circumstance, the charge was improper, permitting the jury to convict without unanimity among the jurors as to which offense the defendant had committed.

The courts must determine whether a particular term in a statute is an element of the crime (the finding of which requires unanimity) or whether it is an underlying brute fact or means of committing an element of a crime (a finding of which does not require unanimity). *Richardson v.*

18

*United States*, 526 U.S. 813, 817 (1999). For instance, when it was alleged that a person charged with felony murder under TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2003) (causing victim's death during commission of state-jail felony), the precise state-jail felony which was then being committed was not an element of the offense itself but, rather, the manner or means by which the offense was committed. Therefore, although the jury must be unanimous in determining that a state-jail felony was being committed, it was not necessary for it to have unanimity as to which such felony was committed. *White v. State*, 208 S.W.3d 467, 469 (Tex. Crim. App. 2005).

In *Francis v. State*, 36 S.W.3d 121 (Tex. Crim. App. 2000), the Texas Court of Criminal Appeals reviewed an indecency with a child case involving two acts of touching the victim's genitals and another two acts of touching the victim's breasts. The State elected to pursue a conviction on two of the incidents, one involving the touching of the victim's breasts and one involving the touching of the victim's genitals. After objection by the defendant, the trial court submitted a charge allowing a conviction on a finding that the defendant did "engage in sexual contact by touching the breast *or* genitals of victim." *Id.* at 122 (emphasis added). It was determined that this was an impermissible charge because it, as in *Ngo*, permitted a nonunanimous finding of guilt. Hines's case does differ from *Francis*; in *Francis*, the alleged offenses did not occur simultaneously but, rather, in four separate instances, each occurring at a different time and date; here, all of the touching occurred within the same incident.

A case with more closely-related facts is *Pizzo v. State*, 235 S.W.3d 711 (Tex. Crim. App. 2007). In *Pizzo*, there were two incidents, but in each of the incidents, the defendant was alleged to have touched both the breasts and the genitals of his victim. The trial court permitted a disjunctive submission ("by touching the genitals or breasts") in the jury charge; the court of appeals affirmed the conviction, citing *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), as controlling law. In *Pizzo*, however, the Texas Court of Criminal Appeals determined that the court of appeals had erred in relying on *Kitchens* rather than the ruling in *Francis*, affirmatively stating that "the jury instruction improperly charged two separate offenses in the disjunctive and therefore permitted a conviction on less than a unanimous verdict." *Pizzo*, 235 S.W.3d at 714. As pointed out,

> Section 22.01(B), criminalizes three separate types of conduct--touching the anus, touching the breast, and touching the genitals with the requisite mental state. Therefore, each act constitutes a different criminal offense and juror unanimity is required as to the commission of any one of these acts.

*Id.* at 719. We, therefore, find that it was error for the trial court to have submitted the question in the disjunctive.

Finding error in the court's charge, however, merely begins the inquiry. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g). We must now determine whether any resulting harm requires reversal. *Pizzo*, 235 S.W.3d at 714; *Francis*, 36 S.W.3d at 125; *Almanza*, 686 S.W.2d at 171.[7]

_____

[7]This contrasts with the situation in which the defendant raises a proper objection at trial; in that circumstance, reversal is required if this error was calculated to injure the defendant. *Almanza*, 686 S.W.2d at 171; *Aguilar v. State*, 914 S.W.2d 649, 651 (Tex. App.—Texarkana 1996, no pet.).

Having found error in the jury charge, we now conduct a harm analysis. At trial, although Hines made objections to the treatment of extraneous offenses in the charge, he said nothing about the disjunctive wording of the two offenses. The record is somewhat unclear whether Hines indicated affirmatively that he had no other objections to the charge or whether he simply failed to raise them. In either event, a failure to raise an objection to an error in a jury charge is treated in the same fashion as a statement by counsel that there is no objection. *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). When the charging error is not preserved, a greater degree of harm is required. This standard of harm is described as "egregious harm." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

> The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal. Because the appellant did not object to the charge, the error does not result in reversal "unless it was so egregious and created such harm that appellant was denied a fair trial." To determine "egregious harm," a reviewing court examines "the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." The appellant must have suffered actual, rather than theoretical, harm. "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'"

*Warner*, 245 S.W.3d at 461–62 (citations omitted).

---

The presence of any harm, regardless of degree, is sufficient to require reversal. *Abdnor*, 871 S.W.2d at 732. There is no burden of proof on the defendant, our determination is simply made from a review of the record. *Ngo*, 175 S.W.3d 738; *see Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008).

In the circumstance here, there were not multiple episodes which constituted the basis of the charges. Rather, there was a single episode, during which the complainant charged that Hines had touched her breasts and her genitals as he attempted to draw her to him.[8] From the description given by Julia, the episode began abruptly, lasted only a short time (probably less than a minute), and ceased immediately when she protested and stood up. During this episode, the touching of the genitals was immediately followed by a touching of the breasts and the two touches appear to have taken place during a continuum of a single episode, taking less than two pages of the record to describe. The trial was not truly about whether Hines had touched Julia's breasts or touched her genitals but, rather, whether the episode had occurred at all.

It is true that the touching of the breasts and the touching of the genitals amounted to two, distinct offenses under TEX. PENAL CODE ANN. §§ 21.11(a) and 21.11(c), and Hines could have been charged with two offenses rather than one. Nevertheless, as the testimony developed, the two offenses were described in testimony as a single episode, the existence of which Hines categorically denied. In essence, the jury found that the single episode (which incorporated both prohibited touchings) occurred. This is distinct from the kind of multiple episodes described in *Francis* (two acts of touching the victim's genitals on one date and two acts of touching the victim's breasts on a different date) and even *Pizzo* (two episodes on different dates, in both of which he was alleged to have touched both the breasts and the genitals of his victim). In this situation, the jury either found

---

[8]Although both the indictment and the charge to the jury mentioned the touching of the anus, there was never any evidence that Hines had ever touched the child's anus.

22

that the gropings occurred or did not occur; the two touches were so bound up together that the jury could hardly have believed that Hines did commit one act, but did not commit the other.

At this point in analysis, the scale tilts strongly toward a finding of a lack of actual harm resulting from the error in the jury charge. However, on closing argument, the State made the following comment:

> Let me tell you, if the twelve of you, based upon the evidence, decide that he never touched her anus, that's fine. All that matters is, is that you believe, by the credible evidence, if he touched the genitals or the breasts, which means twelve of y'all can say "no" to anus; twelve of y'all can say "yes" to the genitals being touched it [sic]; six of y'all can say "yes" to the genitals being touched; or six to the breast being touched; twelve to the breast being touched.

> I think you get the point. It's any combination. Six of you can think one manner; six of you can think the other; eight, two, whatever. You can be unanimous on all of them, all right?

> So when you go back there, don't get hung up on that.

> But I think what the evidence shows y'all, beyond a reasonable doubt, is that beyond a reasonable doubt, beyond it, based upon what you've heard, that that man touched her genitals and her breasts, based upon the evidence you've heard.

Later, during rebuttal argument, immediately after he thanked the jury for its time and its attention, a different prosecutor commenced with the following:

> And I'm going to start off with the charge, because I think the charge is important. You're going to go back there, and you're going to look at it.

> When you look at Paragraph 4, that's the application paragraph, y'all can just get rid of anus. There's no evidence in the case that he touched her anus. . . . So y'all get rid of anus.

23

And the only thing you're left with is genitals or breasts. And like Mr. Vance said earlier, ten of you can say, "I believe beyond a reasonable doubt that he touched her genitals." Two of you can say, "I believe beyond a reasonable doubt that he touched her breasts." And it doesn't matter. We just need one.

All twelve of you could believe beyond a reasonable doubt, with the credible evidence in this case, that he touched her genitals and that he touched her breasts, that's fine, too.

In other words, the State repeatedly urged the jurors to do precisely what they were prohibited by the constitution from doing: arriving at a nonunanimous verdict, making this an error which goes to "the very basis of the case." *Warner*, 245 S.W.3d at 462. Since the caselaw instructs us time and again to look to the entire case, including jury argument,[9] to determine whether egregious error has occurred, we must do so. Had this strategy not been pursued by the State in jury argument, then the argument could more easily have been made that the harm suffered by Hines was only theoretical and not actual. *See Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986); *Almanza*, 686 S.W. 2d at 174. However, in order for us to conclude that the error was harmless in this case, we must first determine that the members of the jury either did not hear or simply ignored the State's repeated arguments and pleas to arrive at a nonunanimous verdict. *See Mathonican v. State*, 194 S.W.3d 59, 66 (Tex. App.—Texarkana 2006, no pet.). We cannot do so. The State, by twice emphasizing the very point which was in error, exponentially magnified the error contained in the charge and converted it from theoretical harm into actual harm.

The point of error is sustained.

---

[9]*Warner*, 245 S.W.3d at 465; *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006); *Ngo*, 175 S.W.3d at 750; *Almanza*, 686 S.W.2d at 171.

We reverse the judgment and remand the case to the trial court for a new trial.


Bailey C. Moseley
Justice

Date Submitted:     September 29, 2008
Date Decided:       October 23, 2008

Publish