In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00098-CR

                                                ______________________________

 

 

                                GEORGE LESLIE SANDERS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 196th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 25,023

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            On three
separate dates, George Leslie Sanders was caught on video selling
methamphetamine to a confidential informant.[1]  As a result, he pled guilty to two deliveries
of between one and four grams of methamphetamine, for which the jury assessed
twenty-nine years’ imprisonment in the Texas Department of Criminal Justice–Institutional
Division.  Sanders also pled guilty to a
larger methamphetamine delivery, for which the jury assessed forty-nine years’
imprisonment and a $10,000.00 fine.[2]  

            On appeal,
Sanders complains he was denied due process when, without benefit of purity
testing, the State’s witness testified Sanders sold a more pure form of
methamphetamine called “ICE.”   Sanders
claims this statement was a knowingly false misrepresentation made merely to
inflame the jury.  He also alleges the
trial court abused its discretion in allowing the State to question him about
previous convictions used for enhancement during punishment because “the facts
of the case were more prejudicial than probative.”  Finally, Sanders argues the trial court erred
in denying motions for mistrial after the State asked him about noncooperation
with the police in a case in which he was a victim.

            We conclude that (1) Sanders waived
his complaint regarding use of the term “ICE,” (2) the trial court did not
abuse its discretion in allowing evidence of Sanders’ prior retaliation
convictions, and (3) admitting the punishment-phase question and answer
regarding Sanders’ “non-cooperation” with police was not error.  Thus, we affirm the trial court’s judgments. 

(1)        Sanders Waived His Complaint Regarding
Use of the Term “ICE”

 

            As a
prerequisite to presenting a complaint for our review, Sanders must have made a
complaint about the use of the term “ICE” as false information to the trial
court by a timely request, objection, or motion.  Tex. R. App. P. 33.1.

            The record
reveals that the confidential informant and the investigator, Wesley Russell,
both testified Sanders sold “ICE methamphetamine.”  Russell explained that ICE was a big problem
in the community and that it was “much more potent than the regular
methamphetamine.”  Sanders did not object
to this testimony.  Instead, he pointed
out during cross-examination that no purity report was requested.  The motion for new trial also fails to
mention this point of error.  Since
Sanders failed to object and bring any alleged error to the trial court’s attention,
he has not preserved this issue for our review.[3]

(2)        The Trial Court Did Not Abuse Its Discretion in Allowing
Evidence of Sanders’ Prior Retaliation Convictions

 

            Sanders pled true to all enhancement
paragraphs.  Nevertheless, his counsel
called him to the stand to confirm that he had been convicted of retaliation
and that no weapon was used during  the commission
of the crimes.  During cross-examination,
the State asked if the previous convictions were for retaliation against two
police officers.  Sanders objected that
“to go behind the conviction itself is just totally inadmissible.”   The State replied it had a right to discuss
the basic facts of the case to demonstrate Sanders’ “nature and his credibility
as a witness.”  The court overruled
Sanders’ objection. 

            The trial
court’s decision to admit or exclude evidence at the punishment phase is
subject to review for an abuse of discretion. 
Manning v. State, 126 S.W.3d
552, 555 (Tex. App.—Texarkana 2003, no pet.)
(citing Mitchell v. State, 931
S.W.2d 950, 953 (Tex. Crim. App. 1996)). 

Regardless
of the plea and whether the punishment be assessed by the judge or the jury,
evidence may be offered by the state and the defendant as to any matter the
court deems relevant to sentencing, including but not limited to the prior
criminal record of the defendant, his general reputation, his character, an
opinion regarding his character, the circumstances of the offense for which he
is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence,
any other evidence of an extraneous crime or bad act that is shown beyond a
reasonable doubt by evidence to have been committed by the defendant or for
which he could be held criminally responsible, regardless of whether he has
previously been charged with or finally convicted of the crime or act.

 

Tex. Code Crim. Proc.
Ann. art. 37.07, § 3 (Vernon Supp. 2009).

 

            Since
revision of Article 37.07 of the Texas Code of Criminal Procedure, this Court
has held that introduction of details and facts pertaining to prior convictions
is permissible in Texas.  Hambrick v. State, 11 S.W.3d 241, 243
(Tex. App.—Texarkana 1999, no pet.) (citing Davis
v. State, 968 S.W.2d 368, 373 (Tex. Crim. App. 1998)).  Specifically, if the State seeks “to go
behind the conviction with details about the prior offense, the evidence is
admissible.”  Id.  Thus, the trial court
did not abuse its discretion in allowing the State to question Sanders about
his prior retaliation convictions.[4]


            For the first time, Sanders raises
the contention that the facts are more prejudicial than probative.  This contention was not raised in objections
during trial or in the motion for new trial. 
Sanders did not preserve this point of error, and we decline to address
it. 

            We overrule
this point of error. 

 

(3)        Admitting the Punishment-Phase Question
and Answer Regarding Sanders’ “Non-Cooperation” with Police Was Not Error

 

            While Sanders was on the stand,
the State began questioning him about the murder of his friend in which he was
also shot.  Sanders twice objected to the
State’s initial questions referring to the incident and unsuccessfully moved
for a mistrial.  After a discussion off
the record, the State established without objection that Sanders refused to
cooperate with the police investigation by refusing to give an affidavit.[5]   Sanders complains the trial court erred in
failing to grant a mistrial. 

            We review a
trial court’s ruling on a motion for mistrial for an abuse of discretion.  Towery
v. State, 262 S.W.3d 586, 598 (Tex. App.—Texarkana 2008, pet. ref’d)
(citing Archie v. State, 221 S.W.3d
695, 699 (Tex. Crim. App. 2007)). 
Mistrial is an appropriate remedy only when objectionable events “are so
emotionally inflammatory that curative instructions are not likely to prevent
the jury from becoming unfairly prejudiced against the defendant.”  Hines
v. State, 269 S.W.3d 209, 215 (Tex. App.—Texarkana 2008, pet. ref’d,
untimely filed; pet. ref’d [2 pets.]) (quoting Young v. State, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)).  

            After
Sanders explained he was the victim in a shooting, the trial court conducted an
off- the-record discussion.  When back on
the record, Sanders’ counsel objected that the “line of questioning” was
irrelevant and immaterial.  The trial
court overruled the objection and denied the first motion for mistrial.  Sanders’ general objection to the State’s
line of questioning as irrelevant was properly denied.  The court could have decided that the State
sought to introduce evidence of Sanders’ character and attitude of
noncooperation and retaliation toward police. 
See Tex. Code Crim. Proc. Ann. art. 37.07.  Moreover, the only statement made by Sanders
at the point of objection established he was a victim of a crime.  Counsel does not explain how this information
could unfairly prejudice the jury against Sanders, rather than cause it to
sympathize with him.  

            The State
next asked Sanders if he “refused to cooperate and give testimony regarding the
murder of Bruce Wetstone.”  Sanders
replied, “No, ma’am.”  Sanders’ counsel
objected and asked the court to instruct the jury to disregard the question and
answer.  The trial court granted his
request, but denied a motion for a mistrial. 

            When
evaluating the effectiveness of a curative instruction to disregard, we look to
“the nature of the [improper comment]; the persistence of the prosecutor; the
flagrancy of the violation; the particular instruction given; the weight of the
incriminating evidence; and the harm to the accused as measured by the severity
of the sentence.”  Searcy v. State, 231 S.W.3d 539, 549 n.10 (Tex. App.—Texarkana
2007, pet. ref’d) (quoting Roberson v.
State, 100 S.W.3d 36, 41 (Tex. App.—Waco 2002, pet. ref’d)).

            The court
instructed the jury to disregard “the last question and response,” an
instruction we presume the jury followed. 
Ladd v. State, 3 S.W.3d 547,
567 (Tex. Crim. App. 1999); Drake v.
State, 123 S.W.3d 596, 604 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d).  We do not find this question to be inoculated
with such prejudice that the court’s instruction to disregard it would be
ineffectual.  Moreover, Sanders fails to
explain how his response—that he did not refuse to cooperate with the murder
investigation—would prejudice the jury against him.  Finally, the jury sentenced Sanders to
approximately one-half of the available punishment range for the larger
methamphetamine delivery, and approximately one-third of the available range
for the two smaller deliveries.

            Given the
facts of this case, we conclude the trial court did not abuse its discretion in
failing to grant Sanders’ motions for the “extreme remedy” of mistrial.  Lollis
v. State, 232 S.W.3d 803, 810–11 (Tex. App.—Texarkana 2007, pet.
ref’d).  This point of error is
overruled.  

            We
affirm the judgment of the trial court.  

 

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date
Submitted:          February 24, 2010       

Date
Decided:             February 26, 2010

 

Do
Not Publish











[1]Sanders
appeals from this cause number and judgments entered in cause numbers
06-09-00099-CR and 06-09-00100-CR.  The
other two cases are the subjects of other opinions issued this date.

 





[2]The
larger delivery was in an amount of four or more grams but less than 200 grams
of methamphetamine. 





[3]Sanders
claims in his brief he was denied due process because the statements from
Russell were knowingly false.  We point
out that Russell’s statements were based on his training to identify
“ICE.”  The fact that no purity testing
was conducted on the methamphetamine does not demonstrate Russell’s statements
were knowingly false. 





[4]Because
the facts of Sanders’ retaliation convictions were admissible, the trial court
did not err in denying Sanders’ repeated motions for mistrial on this
basis.  





[5]Sanders’
brief alleges the State incorrectly asserted he committed a drug-related
murder.  The record establishes
otherwise.  Sanders also claims the
State’s questions “were false statements knowingly presented to the jury.”  The State’s questions, most of which were not
objected to, could not constitute knowing misrepresentations of fact as alleged
by Sanders in his brief.  








lly excludes waste resulting from oil and gas exploration and production. 
See Tex. Health & Safety Code Ann. §§ 361.003(34), 361.003(35) (Vernon 2001). Because the
waste complained of originated from oil and gas production, the waste is exempt from the Texas
Litter Abatement Act.
            The Denmans argue that the exception for oil and gas exploration and production does not
apply because their claims are not confined to pollution of surface water or subsurface water. The
exception contained in Section 361.003 applies to "waste materials that result from activities
associated with the exploration, development, or production of oil or gas or geothermal resources
and other substance or material regulated by the Railroad Commission of Texas under Section
91.101, Natural Resources Code . . . ." Tex. Health & Safety Code Ann. §§ 361.003(34)(iii),
361.003(35)(iii) (Vernon 2001). The Denmans contend that, since the stated purpose of Section
91.101 of the Texas Natural Resources Code is to "prevent pollution of surface water or subsurface
water in the state," the exception applies only to claims alleging pollution to surface or subsurface
water. Tex. Nat. Res. Code Ann. 91.101 (Vernon Supp. 2004–2005). While the Denmans are
alleging the surface and subsurface water has been polluted, they also complain about unused oil
field equipment on their land. According to the Denmans, the exception does not apply to unused
oil equipment. We are not persuaded by this argument. First, Section 91.101 cited by the Denmans,
does not state the purpose of the statute, but rather only authorizes the Texas Railroad Commission 
to issue rules to regulate pollution of surface and subsurface waters. See id. Second, even if the
purpose of the statute is to prevent pollution, we should not interpret a statute differently from the
plain language contained therein unless the plain language yields an absurd result. Fleming Foods
of Tex., Inc. v. Rylander, 6 S.W.3d 278, 282 (Tex. 1999). We are not persuaded by the Denmans'
argument. Because the Texas Litter Abatement Act specifically exempts waste from oil and gas
production, we affirm the trial court's summary judgment on that issue.



Conclusion
            We affirm the trial court's judgment in part and reverse in part. The notice of appeal was
timely filed under the mailbox rule. The Denmans have standing to sue for injuries for which a
cause of action has accrued while they have owned the property. Although the Denmans lack
standing for the majority of their allegations


—as to which we affirm the trial court's dismissal—the
Denmans do have standing to sue for discharges of hydrocarbons and for damages to their farm
equipment occurring during their ownership—as to which we reverse and remand for further
proceedings. Because the Denmans failed to plead any cause of action under Section 85.321, it is
not necessary to determine whether they have standing under that cause of action or whether the facts
alleged are sufficient to constitute a cause of action under that section. Finally, we affirm the
summary judgment concerning the Texas Litter Abatement Act. For the reasons stated, we reverse
the judgment of the trial court and remand for further proceedings consistent with this opinion.


                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          June 16, 2005
Date Decided:             September 23, 2005