**Opinion filed February 29, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00065-CR

_____

## BERNELL DEON MCCLAY, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR19970**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Bernell Deon McClay, of the third-degree felony offense of stalking.  *See* former TEX. PENAL CODE § 42.072 (2001).[1]  After finding an enhancement paragraph to be true, the trial court assessed Appellant's punishment at confinement for sixty years and sentenced him accordingly.  We reverse and remand.

Appellant raises four issues in which he challenges his conviction for the felony offense of stalking.  In his first issue, Appellant claims that the trial court erred when it misstated the law

---

[1]We note that Section 42.072 has since been amended and that the amendments, which took effect September 1, 2011, do not apply to this case because the offense took place in 2008.

regarding the stalking statute in the introductory paragraph and in the application paragraph of the jury charge. Appellant's argument is centered on the fact that the trial court charged the jury in the disjunctive by using the word "or" instead of in the conjunctive by using the word "and." In his remaining three issues, Appellant attacks the legal sufficiency of the evidence.

*Background Facts*

Appellant and the victim, Tamara Mims, had a romantic relationship that began when they were both living in Mathis, Texas, in 2008. They lived together in Mathis until Mims moved to Brownwood in July 2008. After a brief interval during which there was no romantic relationship, Appellant followed Mims to Brownwood and moved into her home there in August 2008. The relationship was described as a volatile one. Mims testified that Appellant was controlling, wanting to know where she was at all times. On November 19, 2008, the two had an argument that progressed into a physical altercation when Appellant struck Mims on her face several times. Appellant trapped Mims in the bathroom of her home and refused to let her out unless she swore on the lives of her children that she would not tell the police that he had struck her. After a friend picked her up from the home, Mims called the police. An officer photographed the bruises on her face. When Mims came back to her home later that day, Appellant was there but ran away when Mims told her friend to "[c]all the cops." The police were called to the residence, and while they were there, Appellant called on Mims's phone. The police answered the phone and gave Appellant a verbal warning not to come back. It was agreed that Appellant's belongings would be packed up and placed at the curb.

Appellant continued to phone Mims throughout the day. That night, Appellant came back to the house, walked in through the back door uninvited, and began rummaging through Mims's things. The police again came to the house, and Appellant fled. Appellant again called Mims, and again the police answered the call. Appellant told the police that he wanted his Lone Star card. The officer told Appellant that he (the officer) had the card and that Appellant could come get it from him; Appellant declined. The officer then confirmed that Appellant had no reason to come back to the residence.

Appellant continued to call Mims that day. The back door of the home was broken, and appellant could "just come in whenever." The next morning, Appellant again came to Mims's home. Mims did not phone the police because Appellant "left with no problems" after a brief time. After dinner that same night, Mims's son was taking out the trash and saw Appellant

2

outside their home; Appellant was "standing in the window watching." Appellant followed Mims's son into the home and told them that he had been watching Mims in her bedroom and also had been watching the family eat dinner. The children went into the bedroom and phoned the police. Appellant again fled the scene and was gone by the time the police, yet again, arrived at the home.

Appellant came back again later that night. He entered the home through the back door and demanded to know who Mims was talking to on the phone. When Mims told the person to whom she was talking to call the police, Appellant ran out the back door. Between November 19 and November 21, Appellant continuously called Mims's place of employment and her home. Each time he demanded to know the name of the person to whom she was talking. The police told Appellant and the owner of the phone Appellant was using to stop calling. Mims pleaded with Appellant and promised not to press charges if he would leave her and her children alone.

Despite all of the warnings and the plea from Mims, the record reflects that Appellant came back to the home again the next morning, November 21, 2008. Once again the police were called. Once again Appellant fled before they arrived. Once again Appellant returned. That night, he came back and became angry when he saw Mims sitting at the computer; he began acting "scary." Appellant looked at the computer and said, "I knew you were on the computer talking to guys." He began going through the computer, reading everything he could find. He picked up the computer and threw it to the ground, smashing it into pieces. He picked up a trash can and tried to throw it through the kitchen window twice. The window did not break, but trash was strewn about the home in the process. He picked up a kitchen chair and threw it into the living room where Mims and her four children were standing. The children were scared and crying, and Mims testified that she feared bodily injury to her person. When Appellant heard Mims's son on the phone with police, once again he fled. The police came to the scene and photographed the damage that Appellant had done to the home. Appellant was apprehended by police after they had chased him. A grand jury subsequently indicted Appellant for stalking Mims.

*Sufficiency of the Evidence*

*A. Standard of Review.*

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding

3

guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 898 (Tex. Crim. App. 2010). This court does not sit as a thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Id.* at 901; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (stating the jury may choose to believe or disbelieve any portion of the testimony a trial). We defer to the factfinder's resolution of conflicting evidence unless the resolution is not rational. *Brooks*, 323 S.W.3d at 902 n.19, 905. Our duty as a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

*B. Applicable Law.*

In order to obtain a conviction, the State was required to prove that Appellant (1) on more than one occasion and pursuant to the same scheme or course of conduct directed specifically at Mims, (2) knowingly engaged in conduct, (3) that he knew or reasonably believed Mims would regard as threatening bodily injury or death to her, (4) that caused Mims to be placed in fear of bodily injury or death, and (5) that would cause a reasonable person to fear bodily injury or death for himself or herself. Former Section 42.072(a).

*C. Sufficiency Analysis.*

We will first discuss Appellant's second issue on appeal. In his second issue, Appellant argues that the evidence was insufficient to prove beyond a reasonable doubt that Appellant engaged in conduct directed specifically toward Mims on November 21, 2008, that Appellant knew or reasonably believed Mims would regard as threatening bodily injury to her.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX. PENAL CODE ANN. § 6.03(b) (West 2011). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* Proof of a culpable mental state almost invariably depends upon circumstantial evidence and may be inferred from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

Here, the jury heard evidence of a physical assault that occurred on the morning of November 19, 2008, and of a constant barrage of verbal harassment that occurred in the days that

followed, culminating in the events on November 21, 2008. There was evidence that on November 19, 2008, the police warned Appellant not to come back to the home. The jury also heard testimony that Mims called the police numerous times during the two-day interval when Appellant was at her home and would not leave. Each time Appellant heard that police were on the way, he fled. The evidence showed that, even though he left the residence when police were summoned, Appellant kept up a stream of harassing phone calls. After the final confrontation on November 21, 2008, Appellant led police on a foot chase. He continued running even after being tased and resisted arrest until a "pressure point" technique was applied to gain his compliance.

These facts would allow a rational jury to infer that Appellant knew or reasonably believed Mims would regard his conduct as threatening bodily injury or death. *Allen v. State*, 218 S.W.3d 905, 909 (Tex. App.—Beaumont 2007, no pet.) (holding that a jury could rationally conclude defendant's "behavior, which persisted after a police officer warned him to stop, revealed a subjective awareness that his actions had placed the complainant in fear of bodily injury"); *see also Sisk v. State*, 74 S.W.3d 893, 900 (Tex. App.—Fort Worth 2002, no pet.) (finding sufficient evidence to conclude the defendant knew or reasonably believed his conduct would threaten the complainant with bodily harm or death when the defendant exhibited toward the complainant a pattern of abusive and obsessive behavior, combined with his awareness of the complainant's actions in securing police intervention).

Appellant contends that, when he threw the trash can, computer, and chair, "none of these actions were necessarily directed toward the alleged victim." We must assume the jury disagreed. It is the responsibility of the jury to draw its own reasonable inferences. *Jackson v. Virginia*, 443 U.S. 307 (1979). That Appellant's actions on November 21, 2008, were directed at Mims was a reasonable inference. Appellant's second issue is overruled.

Appellant argues in his third issue that the evidence was insufficient to prove that his conduct on November 21, 2008, would cause a reasonable person to fear bodily injury. He argues in his fourth issue that the evidence was insufficient to prove that Appellant's conduct on November 21, 2008, caused Mims to fear bodily injury for herself.

The course of conduct between the one issuing the threats and the victim is important to understanding whether there is sufficient evidence of a threat. *See Olivas v. State*, 203 S.W.3d 341, 349–50 (Tex. Crim. App. 2006). The jury reasonably could have interpreted Appellant's

5

nonverbal behavior, including throwing furniture toward Mims and her four small children, as conduct that would cause a reasonable person to fear bodily injury and did cause Mims to fear as much. The jury heard testimony from Mims that she feared Appellant would cause bodily injury to her. The jury is the sole judge of the credibility of the witnesses and may choose to believe some, all, or none of a witness's testimony. *Sharp*, 707 S.W.2d at 614. Considering the pattern of behavior Appellant exhibited, such as physically assaulting Mims, making harassing phone calls, appearing numerous times at her home, breaking her personal property, and throwing a chair toward Mims and her children, we find a reasonable person would have been placed in fear of bodily injury or death. We conclude a rational factfinder could have found all the essential elements of the crime of stalking beyond a reasonable doubt. As such, we find the evidence to be legally sufficient to support Appellant's conviction for stalking. Appellant's third and fourth issues are overruled.

*Jury Charge Error*

*A. The Error.*

In his first issue, Appellant claims that the trial court erred when it misstated the law regarding the stalking statute in the introductory paragraph and in the application paragraph of the jury charge. As we have said, Appellant's argument is centered on the fact that the trial court charged the jury in the disjunctive by using the word "or" instead of in the conjunctive by using the word "and." Our first duty in analyzing a jury charge issue is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

The stalking statute provided in pertinent part as follows:

> (a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct, including following the other person, that:
>
> > (1) the actor knows or reasonably believes the other person will regard as threatening:
> >
> > > (A) bodily injury or death for the other person;
> >
> > . . . .
> >
> > (2) causes the other person . . . to be placed in fear of bodily injury or death . . . ; *and*

6

(3) would cause a reasonable person to fear:

> (A) bodily injury or death for himself or herself.

Former Section 42.072 (emphasis added).

Subsections (1), (2), and (3) of former Section 42.072(a) are each elements of a single offense; the three clauses are equal elements that together define one offense. *Ploeger v. State*, 189 S.W.3d 799, 804–07 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (analyzing the grammatical structure, meaning, and legislative intent of former Section 42.072). Here, in the jury charge, the trial court used the term "or" rather than "and" between each subsection, implying that (1), or (2), or (3) could each independently constitute the offense of stalking. Each subsection should, instead, have been charged as necessary elements of the single offense of stalking. This constituted error because, in so charging the jury, the trial court allowed the jury to find Appellant guilty upon finding fewer than all of the elements of the offense of stalking. *See id.* The State must prove every element of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 895. However, Appellant concedes that his trial attorney did not object to the charge. When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *Ngo*, 175 S.W.3d at 744 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).

*B. Egregious Harm Analysis.*

Egregious harm occurs when the error "affects 'the very basis of the case,' deprives the defendant of a 'valuable right,' or 'vitally affect[s] a defensive theory.'" *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996), and *Almanza*, 686 S.W.2d at 172). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). To determine whether a defendant has sustained egregious harm, we may consider (1) the entire charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information. *Hutch*, 922 S.W.2d at171.

Here, the jury was allowed to choose among the subsections of former Section 42.072(a) as potential bases for its verdict, rather than requiring that it find that all three subsections were proved beyond a reasonable doubt. The law was misstated in the introduction and in the application and was not correctly stated anywhere within the charge. This allowed the jury to

find Appellant guilty without finding that each element of the offense had been proved by the State beyond a reasonable doubt. The charge made optional the statute's requirement that the jury determine whether, in light of the evidence, Mims's fear was reasonable. The application of an objective "reasonable-person" standard is crucial to the constitutionality of the stalking statute. *See Ploeger*, 189 S.W.3d at 806 (citing *Clements v. State*, 19 S.W.3d 442, 451 (Tex. App.—Houston [1st Dist.] 2000, no pet.)) (discussing legislative addition of reasonable-person standard to cure "vagueness deficiency"). Finally, the wording of the application paragraph does not make it clear that the *mens rea* requirement applies to each element of the offense. As written in the charge, it could appear to some readers that a conviction can be had if a victim merely perceives fear of bodily injury, regardless of the actor's knowledge or reasonable belief that the other person will regard his conduct as threatening. The error thus impacted "valuable rights" that go to the "very basis of the case." *See Sanchez v. State*, 209 S.W.3d 117, 125 (Tex. Crim. App. 2006) (holding that the defendant was deprived of a valuable right when the jury was not required to determine every element of the alleged offense, including culpable mental state).

The arguments of counsel only compounded the charge error. In its closing argument, the State emphasized the use of "or" in the charge when it urged the jury that "you will have all of those different ways to prove something. Remember those are 'ors.'" The State continued, "[I]t's either a reasonable person would have feared the conduct the way he was acting or she did fear it. So, it's either one. So, those 'ors' are there for that reason." Appellate courts have found egregious harm based in part on prosecutor statements that exacerbate the harm done by a jury charge error. *Ngo*, 175 S.W.3d at 750–52 (Prosecutor repeatedly emphasized that jury need not be unanimous in selecting among multiple offenses submitted in the disjunctive.); *London v. State*, 325 S.W. 3d 197, 208–09 (Tex. App.—Dallas 2008, pet. ref'd) (In closing argument, the State drew the jury's attention to the language in the charge.); *Hines v. State*, 269 S.W.3d 209, 221 (Tex. App.—Texarkana 2008, pet. ref'd, untimely filed; pet. ref'd [2 pets.]) (State "emphasiz[ed] the very point which was in error [and] exponentially magnified the error contained in the charge and converted it from theoretical harm to actual harm."). The prosecutor's statements in his closing argument exacerbated the error in the jury charge.

The record reveals no other relevant information that would ameliorate the error. The weight of the evidence, though considerable, cannot overcome the harm done. We sustain Appellant's first issue on appeal.

The judgment of the trial court is reversed, and this cause is remanded for a new trial.

ERIC KALENAK

JUSTICE

February 29, 2012

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.