

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MARCOS SILVA COMPEAN, | § | No. 08-19-00218-CR |
| Appellant, | § | Appeal from the |
| v. | § | 41st Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20170D03719) |

## **O P I N I O N**

Appellant Marcos Silva Compean was indicted on two counts of aggravated sexual assault of a minor by penetration, and two counts of indecency with a child by sexual contact. He was found guilty by a jury on all four counts. The case involved two complaining witnesses who testified to several incidents each. Appellant complains that the trial court erred in not requiring the State to elect which of multiple incidents of sexual abuse the two complainants described at trial it was relying upon in seeking his conviction. He further contends that the trial court committed jury charge error when it instructed the jury in the disjunctive that it could find him guilty of one of the indecency counts if he either touched the victim's breast or her genitals. Although we agree with Appellant that the trial court erred in framing the jury charge, we agree with the State that these errors were harmless, and we therefore affirm the trial court's judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. The Four Charges Against Appellant

The two victims in this case, V.T. and I.O., were Appellant's granddaughters and cousins to each other. V.T., who was 22 years old at the time of trial, testified that Appellant first abused her during the summer of 2004 when she was seven years old. I.O., who was 18 years old at the time of trial, testified that Appellant first abused her in 2014 when she was eleven years old. At trial, both V.T. and I.O. testified that they told various family members and friends about the abuse over the years, but no one took any action to report the allegations to the authorities until June of 2017 when V.T. reported the allegations to her father.[1] Shortly before confiding in her father, V.T. learned from another family member that Appellant had also abused I.O., and the two spoke with each other in May of 2017 for the first time about what they had experienced. I.O. thereafter also reported her allegations of abuse to the police. Based on their reports, Appellant was indicted in a four-count indictment as follows:

- Count One alleged that Appellant committed aggravated sexual assault of a child under 14 years of age on or about March 27, 2004, by penetrating V.T.'s sexual organ with his sexual organ.

- Count Two alleged in a two-paragraph charge that Appellant committed indecency with a child under the age of 17 years through sexual contact, on or about March 27, 2004, by touching V.T.'s genitals (Paragraph A), and her breasts (Paragraph B).

- Count Three alleged that Appellant committed aggravated sexual assault of a child under 14 years of age on or about June 5, 2014, by penetrating I.O.'s sexual organ with his fingers.

---

[1] I.O. testified that she confided in one of her friends when she was in either eighth or ninth grade. She also told her older brother about the abuse when she was still in middle school, as well as her mother approximately two years later when she was in 11th grade. Her mother, however, testified that I.O. did not tell her about the abuse until after she filed the police report in 2017. V.T. testified that she reported the abuse to her mother a year or two after the abuse occurred, but that her mother did not inform the authorities. V.T. further testified that she did not tell anyone else about the abuse because her mother would not let her. V.T.'s mother testified that she was told about the abuse when V.T. was 15 years old, but admitted that she did not report it to the police or anyone else, as she "didn't know what to do."

- Count Four alleged that Appellant committed indecency with a child under the age of 17 years by sexual contact on or about June 5, 2014, by touching I.O.'s genitals.  CR10-13

## B. The Victim's Trial Testimony

At trial, V.T. testified that the first instance of sexual abuse occurred during the summer of 2004 when she was seven years old.  The incident occurred while she was attending a family birthday party at her grandparent's apartment.  V.T. testified that Appellant called her into an upstairs bedroom and then grabbed her by the waist, after which he pulled down his pants and her shorts.  Appellant then placed V.T. on top of him, and put his penis inside her vagina.  V.T. testified that a second incident occurred later that same year, the morning after she had spent the night at her grandparent's apartment.  Appellant approached her as she was sleeping on the floor and touched her breasts and her vagina with his hands over her clothing.  V.T. recalled that after she slapped his hand, Appellant stopped and left the room.  And finally, V.T. testified when she was approximately eight or nine years old, Appellant tried to pull her inside a bathroom at her family's home.  However, because she feared Appellant would assault her again, V.T. called out to her brother for help, and he pulled her from the bathroom.  V.T. testified that no abuse took place on that occasion (hereinafter referred to as the "attempt" incident).

I.O. testified that Appellant first assaulted her when she was eleven years old while she was residing with her family at her grandparent's apartment (referred to in the record as the "first incident").  She was asleep on the couch in the living room when Appellant approached her before he went to work, and offered to give her a massage, after which he inserted two fingers into her vagina.  In response to the State's questioning, I.O. testified that Appellant had engaged in similar conduct, (penetrating her vagina with his fingers), approximately ten times over a three-year period of time during her middle school years.  However, on cross-examination, I.O. only recalled one other incident on an unknown date when she was still in sixth grade in which Appellant penetrated

3

her vagina with his fingers (referred to in the record as the "second incident"). I.O. testified that the second incident occurred in a similar fashion to the first one, with Appellant committing the abuse in the early morning hours in her grandparents' living room before he went to work. She further testified that on another occasion, Appellant had touched her vagina, but provided no details regarding that event (referred to in the record as the "fifth incident").

With regard to the remaining seven incidents, I.O. testified on cross-examination that she could not recall what Appellant had done to her on any of those occasions, and in particular, she could not remember if Appellant had penetrated her or touched her inappropriately. In addition, I.O. recalled another occasion at her grandparents' house when Appellant pulled her into a bedroom and tried to force her to lie down with him, but she testified that she was able to leave without any abuse occurring.

### C. The Jury Charge Conference

During the jury charge conference, defense counsel cited the trial court to *Cosio v. State*[2] for the proposition that when a victim testifies to multiple incidents, the State must elect which of those multiple incidents would be used to prove a single count indictment. Counsel expressly raised the rationale for that rule: the failure to elect a specific incident from the several that may have been testified to poses the risk of a non-unanimous verdict. The trial court deferred any further discussion of that issue until it had time to review *Cosio*. Thereafter, a discussion was held off the record, and when the parties returned on the record, Appellant's counsel expressly stated he had no objection to the charge that the trial court had prepared. The trial court's charge addressed the jury unanimity issue with this instruction in the jury charge: "[I]n order to return a verdict, each juror must agree and reach a unanimous verdict upon each single and discrete conduct

---

[2] *Cosio v. State*, 353 S.W.3d 766, 771 (Tex.Crim.App. 2011).

4

alleged in each count." With respect to each count, the trial court quoted the language used in the indictment and instructed the jury that it was to consider the evidence introduced as to each count in determining Appellant's guilt.

### D. The Jury's Verdict

The jury found Appellant guilty of all four counts as alleged in the indictment. Based on the jury's findings in the punishment phase, he was sentenced to a 30-year prison term on Counts One and Three in the indictment (the aggravated sexual assault charges) and six years each on counts Two and Four (the charges of indecency by sexual contact), all of which were to run concurrently. Appellant filed a motion for new trial, arguing that the trial court erred by not requiring the State to make an election as to which of the multiple acts described by the complainants it was relying upon in seeking convictions for each of the four counts in the indictment, and that he was thereby deprived of his right to a unanimous verdict. Following a hearing, the trial court denied Appellant's motion.

## II. ISSUES ON APPEAL

In Issue One, Appellant renews his claim that the trial court erred by not requiring the State to make an election as to the acts for which it was seeking a conviction. He specifically urges that V.T. testified to three separate incidents of abuse and that I.O. testified to ten incidents. Appellant also adds a twist to his argument, contending for the first time on appeal that the trial court committed jury charge error by erroneously instructing the jury in the disjunctive that it could find him guilty of indecency by sexual contact as alleged in Count Two if it found that he touched *either* V.T.'s breasts *or* her genitals, when in fact the two acts of touching constituted separate offenses. And in Issue Two, Appellant contends that these errors violated his constitutional right to a unanimous verdict, thereby justifying a reversal of the conviction.

### III. APPLICABLE LAW AND STANDARD OF REVIEW

A jury must reach a unanimous verdict on the specific criminal offense that the defendant is alleged to have committed. *See Cosio v. State*, 353 S.W.3d 766, 771 (Tex.Crim.App. 2011). To be unanimous, the "jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Id.*, *quoting Stuhler v. State*, 218 S.W.3d 706, 717 (Tex.Crim.App. 2007). Non-unanimity may occur when the State charges a defendant with one offense and presents evidence that he committed the charged offense on multiple but separate occasions. *Cosio*, 353 S.W.3d at 772. In that situation, if requested by the defendant, the State is required to make an election as to which of the multiple acts it intends to rely on to obtain a conviction in order to ensure jury unanimity. *See Owings v. State*, 541 S.W.3d 144, 150 (Tex.Crim.App. 2017) (when an indictment alleged one particular act of sexual assault, and more than one incident of the same act of sexual assault was shown by the evidence, the State was required to "elect the act upon which it would rely for conviction."); *see also Garcia v. State*, 614 S.W.3d 749, 753 (Tex.Crim.App. 2019), *cert. denied*, 140 S.Ct. 2725 (2020) (in a sexual assault trial, where one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence, the State must elect the act upon which it would rely for conviction.).

The trial court's failure to require the State to make an election constitutes error of a constitutional nature, as it violates a defendant's right to notice of the charges against him, as well as his right to a unanimous verdict. *Phillips v. State*, 193 S.W.3d 904, 914 (Tex.Crim.App. 2006); *see also Garcia*, 614 S.W.3d at 754 (when a trial court overrules a timely-made and proper request for an election, the trial court violates the defendant's constitutional right to notice and a unanimous verdict); *Owings*, 541 S.W.3d at 150 (same).

6

Relatedly, even when an election is not requested or required, the trial court, as part of its general duty to correctly instruct the jury on the law applicable to the case, has the responsibility to submit a jury charge that does not allow for the possibility of a non-unanimous verdict. *See Cosio*, 353 S.W.3d at 776; *see also Ngo v. State*, 175 S.W.3d, 738, 748 (Tex.Crim.App. 2005) (en banc) (the defendant's failure to request an election does not eliminate his constitutional right to a unanimous jury verdict.). Therefore, when the State presents evidence of multiple incidents of the same offense, the jury must be instructed that it "must unanimously agree on one incident of criminal conduct (or unit of prosecution)" among those presented. *Cosio*, 353 S.W.3d. at 772; *see also Arrington v. State*, 451 S.W.3d 834, 838 (Tex.Crim.App. 2015) (finding a jury charge deficient because it did not "specifically inform the jurors that they had to be unanimous as to which separate criminal act they believed constituted each count."); *see also Gomez v. State*, 498 S.W.3d 691, 699 (Tex.App.--Houston [1st Dist.] 2016, no pet.) (same).

Further, when there is evidence that a defendant committed the same offense on multiple occasions, a jury charge that includes a general unanimity instruction informing the jurors that their *overall* verdict must be unanimous is not sufficient. *See Arrington*, 451 S.W.3d at 841, 845 (jury charge was erroneous where it included a general unanimity instruction, but failed to identify the particular incidents the State was relying on as they corresponded to the charges before the jury); *see also Gomez*, 498 S.W.3d at 697 (recognizing that "generic language regarding unanimity in the overall verdict is insufficient to ensure a unanimous verdict on a single incident" when the State presents evidence of multiple incidents of the same offense at trial); *Vernon v. State*, 571 S.W.3d 814, 827, 838 (Tex.App.--Houston [1st Dist.] 2018, pet. ref'd) (same).

7

## IV. THE COUNTS WITH I.O. AS A VICTIM

We first consider Appellant's contention as they relate to Counts Three and Four and the offenses involving I.O.

### A. Was an Election Required?

Appellant contends that I.O. testified at trial that he committed ten criminal acts of a sexual nature over a three-year period of time during her middle school years, and that the State was required to elect which of those ten incidents it was relying on in seeking his convictions. As a preliminary matter, we eliminate seven of those incidents from our analysis, as I.O. could not recall what conduct Appellant had engaged in, and in particular, she could not recall if Appellant had touched her inappropriately or had penetrated her vagina with his fingers. Therefore, I.O.'s testimony with respect to those seven incidents was too vague to pose any danger that the jury would have considered any of them as the indicted offense. *See, e.g.*, *Vernon*, 571 S.W.3d at 827 (court found no danger of a non-unanimous jury verdict where child-complainant testified as to only one incident of abuse in any detail, but then testified that he had touched her 20 more times, without providing any dates or locations where the touching occurred, and failed to describe a specific separate instance that could constitute sexual contact), *citing Rodriguez v. State*, 446 S.W.3d 520, 531 (Tex.App.--San Antonio 2014, no pet.) (when complainant provided "specific, detailed testimony" about the charged offenses, but then made a "very vague reference" to other instances of sexual contact, with no specific details, the jury could not have been confused as to which acts constituted the charged offenses); *Cueva v. State*, 339 S.W.3d 839, 851 (Tex.App.-- Corpus Christi 2011, pet. ref'd) (holding that complainant's vague testimony that appellant touched her on more than one occasion did not create danger of confusion on specific testimony of charged offense). Accordingly, no election was required with respect to those seven incidents.

Moreover, I.O. only described one incident that corresponded with the allegation that Appellant committed the offense of indecency by sexual contact as alleged in Count Four of the indictment. Corresponding to that count, she testified that sometime in 2014 Appellant touched her vagina. I.O. also testified "he would try just smacking my butt." However, I.O. did not testify that Appellant had actually touched her on any of those occasions, and more importantly, Count Four only alleged that Appellant had touched I.O.'s vagina and not her anus. Accordingly, the jury could not have relied on this testimony in finding him guilty of that count and no election was required with respect to Count Four.

However, I.O. did describe two specific incidents of sexual abuse during her trial testimony in which Appellant penetrated her vagina with his fingers (the first and second incidents), both of which corresponded with Count Three in the indictment. The State, however, contends that I.O. only described the first incident with specificity, and that the second incident was too "vague" to pose a risk that the jury would have used it to convict Appellant of the aggravated sexual assault.

But unlike I.O.'s testimony regarding the other seven incidents, I.O. provided specific details regarding this incident, describing it as being substantially similar to the first incident. In particular, she testified that on both occasions, Appellant penetrated her vagina with his fingers, during the early morning hours in her grandmother's living room, while she was a sixth grade student. Further, she testified that although she bled and had pain after the first incident, she did not after the second one. Both incidents were described in almost equal detail, and both clearly described an aggravated sexual assault taking place during the same general timeframe. Accordingly, the State was required to make an election as to which of these two acts it was relying upon in seeking Appellant's conviction for Count Three.

9

Moreover, we agree with Appellant that the trial court's unanimity instruction did not sufficiently convey to the jurors which of these two incidents the State was relying upon in seeking his conviction on Count Three. The unanimity instruction stated that "each juror must agree and reach a unanimous verdict upon each single and discrete conduct alleged in each count." The problem is that the jury would not have known which of the two acts that I.O. described constituted the conduct alleged in the indictment. The indictment alleged that the sexual assault occurred on June 5, 2014, and in turn, the trial court instructed the jury that it could find Appellant guilty of Count Three if it found that on or about June 5, 2014, Appellant caused the penetration of I.O.'s vagina with his fingers. However, I.O. did not expressly testify that either of the two acts of penetration occurred on that date, and she was only able to recall that they occurred sometime in 2014 when she was in sixth grade. Moreover, the jury charge defined "on or about" to mean "any date prior to the presentment of the indictment," (i.e., prior to August 2, 2017). Accordingly, given the uncertainty in the dates and the fact that I.O. described two virtually identical acts that corresponded with the allegations in Count Three, the jury charge did not sufficiently convey to the jurors which of the two acts the State was relying upon in seeking his conviction on that count.

## B. Was the Election Error Preserved?

The State also counters that Appellant did not preserve error on this issue, because defense counsel did not make a "direct" or "clear" request to the trial court to require an election. As the State points out, the choice to require the State to elect a specific criminal act is a strategic one, which a defendant may choose to waive or forfeit. *Vernon*, 571 S.W.3d at 826, *citing Cosio*, 353 S.W.3d at 772. In particular, a defendant may choose to not exercise this right so that the State will be jeopardy-barred in the future from prosecuting any of the other offenses that were put in evidence at trial. *Id.*, *citing Cosio*, 353 S.W. 3d at 773; *Ex parte Pruitt*, 233 S.W.3d 338, 346

10

(Tex.Crim.App. 2007). And, as the State points out, during the jury charge conference, defense counsel only made general legal arguments about the need for the State to elect among multiple incidents of criminal conduct to ensure jury unanimity, couching his argument in theoretical terms only, without making an express request that the State make an election in this particular case. Nonetheless, we conclude that the error was adequately preserved for review.

> In order to preserve error for appellate review, the record must show that:
>
> (1) the complaint was made to the trial court by a timely request, objection, or motion that:
>
>> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
>
> . . .
> (2) the trial court:
>
>> (A) ruled on the request, objection, or motion, either expressly or implicitly; or
>>
>> (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

TEX.R.APP.P. 33.1, Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough to "let the trial judge know what he wants, why he thinks himself entitled to it, and [must] do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1992) (en banc). Thus, an objection needs to be specific enough to apprise the trial judge of the party's complaint, and it is only when the nature of the complaint is unclear that we should consider the objection waived. *See Ex parte Little*, 887 S.W.2d 62, 66 (Tex.Crim.App. 1994) (en banc); *see also Lankston*, 827 S.W.2d at 908-909 (a reviewing court should reach the merits of a party's appellate complaints unless it appears from the record that the party failed to effectively communicate his desire).

11

In the present case, the trial judge was sufficiently apprised of Appellant's request to require the State to elect which of the incidents described by I.O. it was relying upon in seeking his conviction for the aggravated sexual assault. While defense counsel may have couched his arguments primarily in theoretical terms during the charge conference, the trial judge indicated that she understood his argument, stating that she wished to read the relevant legal authorities defense counsel had cited, and that she might "go [his] way" after doing so. Although the charge conference thereafter continued off the record, defense counsel summarized what was discussed at the conference during the motion for new trial hearing, without objection from the State. In particular, at that hearing, defense counsel reminded the trial judge that he had raised a concern that I.O.'s testimony described more than one incident of aggravated sexual assault, and that he had therefore asked the trial court to require the State to elect which of those two incidents it was relying upon for that count; and he further reminded the judge that she had denied his request. In response, the judge stated that she recalled having a "lengthy conversation" at trial about the issues pertaining to the requested election and the requirements of jury unanimity in general, but believed she had satisfied defense counsel's concerns by giving the jury-unanimity-instruction set forth above. Significantly, during the new trial hearing, the State did not contradict Appellant's version of what occurred at trial or otherwise object to his summary of events.

The record therefore shows that Appellant sufficiently apprised the trial court that he was requesting the State to make an election with regard to which of the incidents described by I.O. it was relying upon in seeking his conviction, and that the trial court either expressly or impliedly denied his request. Accordingly, we reject the State's forfeiture argument.

## C. Was Appellant Harmed by the Election Error?

The final question is whether the trial court's failure to require an election harmed Appellant. Because the failure to make an election potentially deprives a defendant of the right to a unanimous verdict, the error is of constitutional magnitude. *See Owings*, 541 S.W.3d at 150. When conducting a constitutional harm analysis of an election error, a court must reverse a judgment of conviction unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Id.*, *citing* TEX.R.APP.P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."). In making this determination, a reviewing court should analyze the error in the context of the following four purposes underlying the election requirement:

(1)  to protect the accused from the introduction of extraneous offenses;

(2)  to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty;

(3)  to ensure unanimous verdicts; that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred; and

(4)  to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend.

*Dixon*, 201 S.W.3d at 733, *citing Phillips*, 130 S.W.3d 343, 349 (Tex.App.--Houston [14th Dist.] 2004) *aff'd*, 193 S.W.3d 904 (Tex.Crim.App. 2006) (internal citations omitted); *see also Garcia*, 614 S.W.3d at 757 (reaffirming the manner in which a reviewing court should analyze harm where an election error has occurred).

*1. The First Purpose: To protect the accused from the introduction of extraneous offenses*

"The general rule is that an accused is entitled to be tried for the offense for which he is charged and not for some collateral crime or for being a criminal generally." *Couret v. State*, 792 S.W.2d 106, 107 (Tex.Crim.App. 1990) (en banc). Therefore, the State is generally prohibited from proving prior specific acts of misconduct, similar happenings, or extraneous offenses committed by the accused for purposes of proving a person's character in order to show that on a particular occasion the person acted in accordance with the character. TEX.R.EVID. 404(b)(1); *see also Devoe v. State*, 354 S.W.3d 457, 469 (Tex.Crim.App. 2011) (under Rule 404, evidence of a defendant's extraneous offense is not admissible if its only purpose is to show that the defendant had a bad character, and that he acted in conformity with that character at the time of the charged offense).

There are, however, several exceptions to the general rule of inadmissibility. Significant here, in cases in which a defendant is charged with sexual assault of a child, Article 38.37(1) of the Code of Criminal Procedure permits the admission of evidence of relevant extraneous offenses committed by a defendant against the child-victim for its bearing on "relevant matters," including: "(1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." TEX.CODE CRIM.PROC.ANN. art. 38.37(1)(b)(1)-(2). In light of this Code provision, a defendant is "not entitled to protection from the introduction of evidence of extraneous offenses" committed against the same child-victim. *See Owings*, 541 S.W.3d at 151. Therefore, when as here, a child-victim has testified to more than one incident of sexual abuse, the court has repeatedly held that the first factor in the election-harm analysis does not weigh in favor of a finding of harm. *See id.*; *see also Garcia*, 614 S.W.3d at 757; *Dixon*, 201 S.W.3d 731, 734 (Tex.Crim.App 2006).

Appellant, however, contends that he was nevertheless harmed by the admission of the second incident of sexual abuse because the trial court did not give the jury a limiting instruction explaining that it could only consider the second incident for the purposes expressed in Article 38.37. And he points out that in the various Court of Criminal Appeals cases in which the court found that no harm came from the admission of such evidence, limiting instructions of this nature were given. While we note that limiting instructions were given in both *Owings* and *Garcia*, the court did not consider this to be an important part of its analysis in either case, nor did the court state in either case that giving such an instruction was necessary to ensure that the first purpose was met. To the contrary, the court has repeatedly held that because Article 38.37 of the Code of Criminal Procedure "permits the admission of evidence of relevant extraneous offenses committed by a defendant against a child victim," the admission of such evidence simply does not support a finding of harm with respect to the first factor in the analysis.[3] *Garcia*, 614 S.W.3d at 757, *citing Owings*, 541 S.W.3d at 151; *Dixon*, 201 S.W.3d at 734. Accordingly, we conclude that the admission of the second incident of abuse in this case does not warrant a finding of harm under the first factor in our analysis.

> 2. *The Second Purpose: To minimize the risk of a conviction where reasonable doubt exists*

In *Owings*, the Court of Criminal Appeals explained that when the State presents "evidence of different activities from different sources," a risk exists that a jury might perceive that these activities "add[ed] up" to the defendant's guilt, even though no individual offense was proven beyond a reasonable doubt. *Owings*, 541 S.W.3d at 151. However, the court expressly held that such a risk does not exist when the testimony relating to one or more crimes comes from the same

---

[3] Appellant did not request any such limiting instruction at trial, nor does he raise the failure to give a limiting instruction as a separate point of error on appeal.

source, that is, from the same child-victim. *Id.*, *citing Dixon*, 201 S.W.3d at 735 (finding no risk of an improper conviction due to State's failure to elect among evidence of multiple offenses, where the multiple offenses were "all recounted by the same source--the child."). In *Owings*, the court noted that the child-complainant had testified at trial that the defendant had committed the same criminal offense as alleged in the indictment on multiple occasions, with very little variance in her description of what occurred on each occasion. *Owings*, 541 S.W.3d at 152. The court held that under such circumstances, the only issue for the jury was whether she was credible or not in her description of the "ongoing, repeated instances" of abuse, and that if they believed her, the jurors would have had no reason to believe that the defendant committed one offense and not the other. *Id.* at 151-52. And because the victim described the incidents in enough detail to support a finding of guilt, the court found no danger that the jury would have based its verdict on anything less than reasonable doubt. *Id.* at 152; *see also Hiatt v. State*, No. 05-19-00564-CR, 2020 WL 7021539, at *5-6 (Tex.App.--Dallas Nov. 30, 2020, no pet.) (mem. op., not designated for publication) (where child-complainant described one sequence of events that happened multiple times under the same or similar circumstances, court found no risk that the jury would have found the defendant guilty of an offense that was not proven to its satisfaction beyond a reasonable doubt).

Appellant, however, contends that his case is different from *Owings* because in his case there were two child-complainants, V.T. and I.O., who provided testimony regarding several different incidents of alleged abuse, occurring at different times and places. He therefore contends that this is "precisely the kind" of evidence from different sources that a jury might cumulate to find the defendant guilty even though no individual offense was proven beyond a reasonable doubt. We disagree.

16

Because Appellant was tried for all four counts in a joint trial involving two complainants, the State would necessarily be required to present evidence of different incidents of abuse occurring at different times and places. However, the complainants testified solely with respect to the incidents in which Appellant abused them, and neither one expressed any opinion about whether Appellant abused the other victim. And as in *Owings*, I.O. was the only witness to testify as to the two incidents in which Appellant digitally penetrated her. Moreover, as in *Owings*, Appellant did not provide a separate defense as to these two incidents--such as an alibi defense-- and instead, his only defense at trial was a blanket denial that *any* abuse occurred, and that I.O. was not a credible witness due to inconsistencies in her testimony and her delayed outcry. Therefore, the only issue for the jury was whether I.O. was credible or not in her description of the two incidents. And because the jury had no reason to differentiate between these two nearly-identical incidents in reaching its verdict, if it found her testimony believable with respect to the first incident, it would have found her believable with respect to the second.[4] *See Dixon*, 201 S.W.3d at 735 (where child-victim articulated a sequence of acts involving similar abuse, the jury's only choice was to find the victim either credible or not in giving this "unified account," and whether the sequence of events "occurred one, ten, fifty, or one hundred times does not by itself impact the believability of the child's story.").

Because V.T.'s testimony was sufficiently detailed with respect to both incidents, we perceive no danger that the jury would have convicted Appellant of Count Three in the indictment

---

[4] As the Court of Criminal Appeals pointed out in *Dixon*, under such circumstances, a defendant should consider himself fortunate that he was only charged with one offense for which the jury could convict him, and that the State's failure to elect between multiple offenses described at trial means that the remaining offenses would be jeopardy-barred. *Dixon*, 201 S.W.3d at 735.

on anything less than a finding of guilt beyond a reasonable doubt. Accordingly, the second factor does not support a finding of harm.

### 3. *The Third Purpose: To ensure a unanimous verdict*

The purpose of ensuring a unanimous verdict is, of course, at the heart of our harm analysis. Appellant contends that this purpose was not met in his case, relying primarily on the Court of Criminal Appeals' opinion in *Phillips v. State*. In *Phillips*, the defendant was charged with, among others, one count of oral contact of his 15-year-old victim's sexual organ with his mouth, and one count of digital penetration of the victim's sexual organ. 193 S.W.3d at 906. At trial, the victim testified to two very specific incidents in which the defendant engaged in both oral contact and digital penetration, occurring at different locations and on different dates. *Id*. at 907. On review, the Court of Criminal Appeals held that the State's failure to elect which of the two incidents created a danger of a non-unanimous verdict, as the victim gave more than one detailed and varied account for each type of offense charged.

We conclude, however, that Appellant's case is more like *Owings* than it is *Phillips*. In *Owings*, the court found no danger of a non-unanimous verdict, despite the State's failure to elect, where the child-complainant testified that the defendant--who was charged with a single count of aggravated sexual assault occurring by way of "genital-to-genital contact"--had engaged in the same act of "genital-to-genital contact" on multiple occasions in three different locations. *Owings*, 541 S.W.3d at 152-153. The court recognized that although "theoretically" some jurors might have voted to convict the defendant based on a belief that the abuse occurred only in one location, while other jurors could have voted to convict him based on a belief that the abuse only occurred in one or more of the other two locations, the likelihood of that was "almost infinitesimal." *Id*. at 152. In reaching this conclusion, the court distinguished its holding in

18

*Phillips*, noting that the sole issue in *Owings* centered on the child-victim's credibility; and because she described an ongoing pattern of abuse that was committed in the same manner each time, albeit in different locations, the jury would have had no basis to believe that one incident occurred, and another did not. *Id*. at 152.

We find even less of a risk of a non-unanimous jury verdict in this case. I.O. testified to two virtually identical acts of sexual abuse involving digital penetration, occurring in the same location, at the same time of day, and in the same year, albeit on different unspecified dates. And as in *Owings*, because Appellant's counsel flatly denied that any abuse occurred, the only issue for the jurors was the credibility of I.O.'s testimony. The jury's only choice was to either believe her testimony that the abuse occurred or that it did not. And given her substantially similar description of the two incidents, the jury had no basis for believing that I.O. was credible in her description of one incident but not the other. Like *Owings*, we discount the theoretical possibility that one juror may have believed that Appellant digitally penetrated I.O. only on the first occasion, while another juror believed he did so only on the second occasion. *Id.* at 152-153; *see also Cosio*, 353 S.W.3d at 777-78 (where defendant was charged with two counts, but child-complainant described four incidents of abuse, it was "highly likely that the jury's verdicts . . . were, in fact, unanimous," where the only issue for the jury was whether they believed the child-complainant's description of abuse or the defendant's blanket denial that any abuse occurred). Accordingly, because we find no danger that the jury's verdict was not unanimous, the third factor therefore does not weigh in favor of a finding of harm.

   *4. The Fourth Purposes: To give the defendant notice of the charges against him*

And finally, we find no risk that Appellant suffered any harm by being deprived of adequate notice of which offense he was required to defend against. Appellant's defense was the same as

to each incident that I.O. described, as he made a blanket denial that any abuse occurred and that I.O. was simply not a credible witness. He presented no explanation for the different incidents and provided no alibi evidence for any of the incidents I.O. described. Therefore, any error in failing to require the State to make an election did not harm his ability to respond to the charges against him. *See Garcia*, 614 S.W.3d at 758 (recognizing that the court has "held in previous cases that these kinds of "blanket denial[s]" may render any violation of the defendant's right to adequate notice harmless."); *see also Owings*, 541 S.W.3d at 153 (finding no risk that defendant was deprived of adequate notice of which offense to defend against where his only defense was a "blanket denial that any incident of sexual abuse happened," and he provided no alibi evidence or "different explanations" for any of the alleged incidents).

Moreover, Appellant did not make his request for an election until after he rested his own case-in-chief, and therefore, even if the State had made an election at that time, it would have had no impact on his ability to defend against the charges. Accordingly, Appellant's defense was not inhibited by any error that may have occurred in the trial court's failure to require the State to make an election under Count Three in the indictment. Thus, the fourth factor does not weigh in favor of a finding of harm.

As none of the four factors weigh in favor of a finding of harm, we conclude that the State's failure to elect which of the two incidents of abuse it was relying on in seeking Appellant's conviction for Count Three did not cause any harm to Appellant.

## V. THE COUNTS WITH V.T. AS A VICTIM

Appellant next raises two complaints regarding the counts involving V.T. as a victim. First, he contends that the trial court erred in not requiring the State to elect which of the three incidents that V.T. described at trial it was relying upon in seeking his convictions for Counts One

20

and Two. Second, he contends that the State was also required to make an election regarding whether it was relying on genital-touching or on breast-touching in pursuing his conviction for indecency by sexual contact as alleged in Count Two in the indictment. And relatedly, Appellant contends that the trial court erred in instructing the jury in the disjunctive that it could find him guilty of Count Two if it found that he either touched V.T.'s breasts or her genitals.

**A. Was an Election Required with Regard to the "Attempt" Incident?**

Appellant first contends that although he was only charged with two counts of criminal conduct involving V.T. as a victim, V.T. testified at trial to three separate incidents of sexual criminal conduct. He contends that the State was therefore required to make an election regarding which of the three incidents it was relying upon in seeking his conviction with respect to the two charges in the indictment. The third incident, however, was the "attempt" incident that V.T. described where Appellant unsuccessfully tried to pull her into a bathroom. That event did not amount to either an aggravated sexual assault or the offense of indecency by sexual contact, as alleged in the indictment. The jury could not have used the attempt incident as a basis for finding Appellant guilty of either of those two counts. Accordingly, the State was not required to elect between these three incidents at trial. *See, e.g.*, *Villalobos v. State*, No. 08-09-00014-CR, 2010 WL 4523763, at *3 (Tex.App.--El Paso Nov. 10, 2010, pet. ref'd) (not designated for publication) (election requirement did not apply where child-victim's testimony described a single act of anal penetration as alleged in the indictment, and no other evidence of any acts constituting that count in the indictment was introduced at trial); *Martinez v. State*, 225 S.W.3d 550, 555 (Tex.Crim.App. 2007) (election not necessary where parties had not offered evidence of multiple occurrences of conduct conforming to a single indictment allegation).

**B. The Indecency Count: A Failure to Elect or a Jury Charge Error?**

Appellant next contends that the State was required to elect which of the two acts alleged in Count Two in the indictment it was relying upon in seeking his conviction on the indecency charge. Count Two alleged that he both touched V.T.'s breasts and her genitals. Appellant correctly points out that under the indecency statute, when a defendant touches a child-complainant's breasts and vagina, this constitutes two separate offenses, even if the touching occurs during the same incident.[5] *See Pizzo v. State*, 235 S.W.3d 711, 713 (Tex.Crim.App. 2007) (holding that the offense of indecency with a child by contact is a conduct-oriented offense, which criminalizes three separate types of conduct--touching the anus, touching the breast, and touching the genitals with the requisite mental state--and each act of touching constitutes a separate offense); *Loving v. State*, 401 S.W.3d 642, 648 (Tex.Crim.App. 2013) (reaffirming holding in *Pizzo*). Accordingly, when the State presents evidence at trial that a defendant has committed two separate acts of breast touching and genital touching, when properly requested, the State is required to elect which of the two acts it is relying upon in seeking a conviction for a single count of indecency with a child. *Francis v. State*, 36 S.W.3d 121, 125 (Tex.Crim.App. 2000).

In the present case, V.T. testified at trial that Appellant touched both her breasts and her vagina during his second encounter with her, thereby describing two separate offenses. Appellant, however, did not request that the State elect between these two acts of touching below. Instead, his sole "election" argument at the trial court with regard to the V.T. counts centered on the extraneous "attempt" incident described above.[6] And, as explained above, because defense

---

[5] Section 21.11 of the Penal Code under which Appellant was charged, provides that "'sexual contact' means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person." TEX.PENAL CODE ANN. § 21.11.

[6] In particular, Appellant did not mention this particular election requirement either during the jury charge conference

22

counsel's choice to not require the State to make an election under these circumstances may have been a strategic one, Appellant forfeited his right to raise this issue on appeal. *See Vernon*, 571 S.W.3d at 826.

This brings us to Appellant's last, but related complaint, that the trial court erred by instructing the jury in the disjunctive that it could find him guilty of indecency by sexual contact as alleged in Count Two of the indictment if it found that he had touched V.T.'s breasts *or* her genitals.[7]  As Appellant admittedly did not object to the jury charge, we review this alleged error under the familiar *Almanza* standard, first determining whether error occurred, and if so, whether the unobjected-to error caused egregious harm to the defendant's case.[8]  *Almanza v. State*, 686 S.W.2d 157, 171-74 (Tex.Crim.App. 1985) (en banc) (op. on reh'g).

---

or at the hearing on his motion for new trial.

[7] The charge read as follows: "Now if you find from the evidence beyond a reasonable doubt that on or about the 27th day of March, 2004, in El Paso County, Texas, [Appellant] did then and there with intent to arouse or gratify the sexual desire of [Appellant] intentionally or knowingly engage in sexual contact with [V.T.] a child who was then and there younger than 17 years of age and not the spouse of said defendant by then and there touching the genitals or the breast of [V.T.] then you will find [Appellant] guilty of Indecency with a Child as charged in Count II of the indictment."

[8] The State argues that we should not consider this complaint at all, as Appellant's appellate brief did not raise jury charge error in his statement of the issues.  Rule 38.1(f) of the Texas Rules of Appellate Procedure provides that a brief "must state concisely all issues or points presented for review."  TEX.R.APP.P. 38.1(f).  Rule 38.1, however, further provides that "[t]he statement of an issue or point will be treated as covering subsidiary question that is fairly included."  *Id.*  In addition, Rule 38.9 recognizes that briefs are to be "construed liberally," and provides that "[b]ecause briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, substantial compliance . . . is sufficient[.]"  TEX.R.APP.P. 38.9.  While Appellant framed his issue in terms of the trial court's error in failing to require the State "to elect the specific act upon which it would rely upon for conviction," his briefing clearly addressed the related issue of jury charge error.   And because the failure to elect and the question of jury charge error both address the same danger of a non-unanimous verdict, we therefore liberally construe Appellant's brief as raising both issues.  *See, e.g.*, *Demps v. State*, 278 S.W.3d 62, 67 (Tex.App.--Amarillo 2009, pet. ref'd) (even though appellant's brief was multifarious, as the appellant argued in one issue that the State failed to make a required election, and that because of this failure, the trial court provided an erroneous jury charge that allowed for a non-unanimous verdict, the court would liberally construe the defendant's brief as fairly raising both issues).

### 1. *The jury charge was erroneous*

As set forth above, the act of touching a child-victim's breasts and touching her genitals constitutes two separate offenses. Therefore, a jury charge is erroneous if it instructs the jury in the disjunctive that it may find a defendant guilty of indecency with a child by engaging in sexual contact by touching the "breast or genitals of the victim," as such a charge poses the danger of a non-unanimous verdict; in particular, some jurors might vote to convict the defendant based on a belief that he touched the victim's genitals, while others might base their verdict on a finding that he touched the victim's breasts. *See Francis*, 36 S.W. 3d at 122-123, 125 (finding that a defendant's right to a unanimous verdict was violated where the jury was erroneously charged in the disjunctive that it could find the defendant guilty of either touching the victim's breasts or her genitals, and remanding the matter to the court of appeals to conduct a harmless error analysis); *see also Pizzo*, 235 S.W.3d at 713, 719 (same). Therefore, the next and final step in our analysis is to determine whether Appellant was egregiously harmed by the jury charge error. We conclude that he was not.

### 2. *Appellant was not egregiously harmed*

Under *Almanza*, an egregious harm determination must be based on a finding of actual rather than theoretical harm to the accused. *See Almanza*, 686 S.W.2d at 174. For actual harm to be established, the charge error must have affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Cosio*, 353 S.W.3d at 777, *citing Almanza*, 686 S.W.2d at 171. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *See Taylor v. State*, 332 S.W.3d 483, 489 (Tex.Crim.App. 2011). When assessing egregious harm based on jury charge error, we consider: (1) the charge as a whole; (2) the state of the evidence, including contested issues and the weight of the probative

evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *See Cosio*, 353 S.W.3d at 777.

Starting with the jury charge, the trial court provided the jury with a unanimity instruction stating that in order to return a verdict, each juror must agree and reach a unanimous verdict upon each single and discrete conduct alleged in each count. However, this instruction did little to ensure that the jury understood the unanimity requirement in this context, as Count Two alleged that Appellant engaged in both acts of touching. This factor therefore weighs in favor of a finding of egregious harm. *See id.* (where jury charge permitted non-unanimous verdicts based on the evidence presented in the case, first factor weighed in favor of reversal); *see also Arrington*, 451 S.W.3d at 841 (where trial court provided multiple generic unanimity instructions, none of which apprised the jury of the proper unanimity requirement, this factor weighed in favor of finding egregious harm).

However, the state of the evidence weighs heavily in favor of a finding of no harm. In making this determination, we find our sister court's opinion in *Hines v. State*, 269 S.W.3d 209, 220 (Tex.App.--Texarkana 2008, pet. ref'd) instructive. As in the present case, the trial court in *Hines* instructed the jury, without objection, that it could find the defendant guilty of indecency with a child if it found that he either touched the child's breasts or her genitals. *Id.* at 220. The court found that the instruction was erroneous, but that the state of the evidence weighed heavily against a finding of egregious error. *Id.* In making this determination, the court found it significant that the defendant made a blanket denial that he had engaged in any act of touching, and argued that the victim's testimony was not credible. *Id.* The court, finding it significant that the two acts of touching occurred in a single incident, concluded that "the two touches were so

bound up together that the jury could hardly have believed that [the defendant] did commit one act, but did not commit the other." *Id.*

As in *Hines*, V.T. testified that Appellant touched both her breasts and her genitals in a single incident, while Appellant denied that he engaged in either act of touching, with his only defense being an attack on V.T.'s credibility. Therefore, it would be illogical to conclude under these circumstances that the jury would have believed that one touching occurred, but the other did not. *Id.*; *see also Cosio*, 353 S.W.3d at 777-78 (finding it logical to conclude that the jury unanimously agreed that the defendant committed all of the incidents described by the child-complainant, where only issue raised at trial was her credibility). Accordingly, we find that this factor weighs heavily against a finding of harm.

Turning to the last factor, our review of the record finds that neither party made any arguments or comments to the jury that would have misled the jurors on the issue of the need for a unanimous verdict. In contrast, in *Hines*, the court ultimately found egregious harm existed because the two prosecutors in that case repeatedly misinformed the jurors during closing arguments that they were not required to reach a unanimous verdict with respect to which of the two acts of touching occurred. *Hines*, 269 S.W.3d at 221. In particular, the prosecutors twice informed the jurors that they could "split" their vote, and that some of them could find that the defendant touched the victim's genitals, while others could find that the defendant touched her breasts. *Id.* at 221. Thus, the State urged the jurors to do precisely what they were prohibited from doing: arriving at a nonunanimous verdict, making this an error that went to "the very basis of the case," thereby rendering the jury charge error harmful to the defendant's case. *Id.*; *see also Ngo*, 175 S.W.3d at 751 (finding egregious harm where both the trial judge and the prosecution misstated the law on the unanimity requirement on multiple occasions, informing the jury on three

26

occasions that it did not need to return a unanimous verdict and that it could instead render a "mix and match" verdict). Unlike *Hines*, however, the prosecutors in the present case did not tell the jurors that they could "split" their vote or that the law allowed for a non-unanimous verdict. To the contrary, the record herein does not contain any inappropriate comments by either the attorneys or the trial court that would have added to the jury charge error by misstating the law on the issue of jury unanimity.[9] This factor therefore weighs against a finding of harm.

On balance, our review of the *Almanza* factors convinces us that Appellant did not suffer any actual harm as the result of the error in the jury charge.

## VII. CONCLUSION

Although we find that the trial court erred in refusing Appellant's request for an election with regard to Count Three in the indictment, and that the trial court's disjunctive jury charge with respect to Count Two was erroneous, we conclude that these errors do not result in reversible error. We therefore sustain Appellant's Issue One in part, as described above, but overrule Issue Two. The trial court's judgment is affirmed.

JEFF ALLEY, Justice

April 26, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

---

[9] In fact, during closing argument, one of the prosecutors argued that the State proved that Appellant was guilty of Count Two by referring to V.T.'s testimony in which she recalled that Appellant had "rubbed her breast *and* rubbed her vagina."

27